IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA SEGURA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 7020 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| TLC LEARNING CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On December 17, 2013, plaintiff Cynthia Segura filed a three-count third amended complaint alleging that her former employer, the TLC Learning Center ("TLC"), a private educational institution: (1) interfered with her right to take family medical leave pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. (Count I); (2) retaliated against her for taking family leave in violation of 29 U.S.C. § 2615(a)(2) (Count II); and (3) violated the Americans with Disabilities Act ("ADA"), 42 U.S.C.§ 12101 et seq., by discriminating against her based on her association with an individual with a disability (Count III).  Plaintiff has filed the instant motion for partial summary judgment pursuant to Fed. R. Civ. P. 56, contending that no genuine issue of material fact exists and that plaintiff is entitled to judgment as a matter of law as to Counts I and II.  Plaintiff is not seeking summary judgment on her ADA claim.  For the following reasons, plaintiff's motion for partial summary judgment on liability is granted as to Count I and denied as to Count II.

**BACKGROUND**[1]

Plaintiff began working at defendant TLC's Crest Hill location in June 2008. Patricia Forkan is the Owner and Executive Director of TLC. Plaintiff asserts that on March 27, 2012, her husband was hospitalized for liver cirrhosis and ascites. From March 27, 2012, through April 11, 2012, plaintiff took personal days off from work. On April 11, 2012, plaintiff informed Forkan by email that she would need to take "a family leave of absence" from her position as Kindergarten Teacher/Assistant Director[2] to care for her husband. Forkan replied by email that same day, stating "[o]f course you have to be there for your husband, he needs you now." Forkan stated that she would make plaintiff's "family leave [e]ffective Monday April 15th," and that plaintiff's insurance would be "in effect for 12 weeks of family leave."

---

[1] The following facts are, unless otherwise specified, undisputed and come from the parties' Local Rule 56.1 statements. However, defendant's response to plaintiff's L.R. 56.1 statement contains improper answers. L.R. 56.1(b)(3) requires "a concise response to the movant's statement." Defendant's "concise" response overflows with argument and factual assertions wholly unrelated to the assertions in plaintiff's statement. In addition, many of defendant's answers claim that the statement of facts are admitted, but then proceed to give additional, extraneous information. This additional information will not be considered by the court. See, e.g., Stevo v. Frasor, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote clarity of summary judgment filings."); McGuire v. United Parcel Serv., 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."). The court reminds counsel that the purpose of L.R. 56.1 statements is to "identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments." Warner Bros. Entm't, Inc. v. Synergex Corp., No. 12-C-8483, 2014 WL 518085, at *1 (N.D. Ill. February 10, 2012).

[2] Although defendant disputes that plaintiff was an Assistant Director, in a March 6, 2012, email from Forkan to plaintiff, attached to defendant's response as Exhibit 22, Forkan explicitly refered to Cynthia as an Assistant Director: "Cynthia you are the Assistant Director."

Plaintiff contends that shortly after her family leave began, Forkan told Michelle Massarello, a TLC employee, that she may work in plaintiff's kindergarten classroom in the fall. Forkan arranged with and paid for Massarello to attend a three-day Montessori workshop beginning on April 27, 2012. In April 2012, Massarello and another TLC co-worker were asked to clean out the kindergarten classroom closet containing some of plaintiff's belongings.[3] Massarello's affidavit states that Forkan informed her in April 2012, that she would be teaching the kindergarten class instead of plaintiff because she had attended the Montessori training session.[4] Defendant contends that Massarello teaching the class was contingent on plaintiff not returning from leave.

On May 31, 2012, plaintiff emailed Forkan about returning to work. Plaintiff stated that it was "almost time for [her] to return to work," but that because of her husband's continued medical needs she was "requesting to have the rest of the summer off." Plaintiff further stated that she hoped Forkan would "give [her] this opportunity" and that she would "take whatever teaching job is available." On June 5, 2012, Forkan responded to plaintiff's May 31 email: "I had to fill the Kindergarten position. I am going to make it a Montessori kindergarten. Michelle went to the Montessori training in Moline so she will be doing it in the fall. I do not know what

---

[3] This is a prime example of defendant's improper L.R. 56.1 responses. Defendant's response denies plaintiff's statement that the kindergarten closet containing plaintiff's belongings was cleaned out. However, defendant goes on to state in that very same response that because Forkan "did not feel comfortable with leaving Segura's materials in the classroom" Forkan "purchased shelves for Segura's materials and assembled the shelves in the administrative closet . . . for safekeeping." Accordingly, it is undisputed that plaintiff's belongings were removed from the kindergarten classroom.

[4] The parties dispute whether Massarello's affidavit is proper and admissible. The court will not resolve this disagreement because it is immaterial to the court's decision on the instant motion.

will happen in the fall right now we are over staffed. Your insurance is being canceled unless you want to pay $500 per month to keep it in effect." Plaintiff responded later that day: "if I came back on [June] 17th what would my position be?" Defendant replied a few minutes later: "There is no position." Defendant TLC's business records show that plaintiff was on "Family Leave" beginning on March 26, 2012, and that she was terminated for an "Unknown Reason" on June 7, 2012.

## **DISCUSSION**

**A.** **Legal Standard**

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum–Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Green v. Carlson, 826 F.2d 647, 650 (7th Cir. 1987); Fisher v. Transco Services–Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

4

"The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**B.      FMLA**

The FMLA entitles an eligible employee to 12 workweeks of leave during any 12-month period for certain qualifying reasons, including the need to care for a spouse suffering from a serious health condition. 29 U.S.C. § 2612(a)(1). Under the FMLA, it is unlawful for an employer to interfere with an employee's attempt to exercise any FMLA rights. 29 U.S.C. § 2615(a)(1). It is also unlawful for an employer to retaliate against an employee who exercises FMLA rights. 29 U.S.C. § 2615(a)(2).

**1.      Count I - Interference**

To prevail on the FMLA interference claim, plaintiff must show that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. See, e.g., Burnett v. LFW Inc., 472 F.3d 471 , 477 (7th Cir. 2006); Daugherty v. Wabash Ctr., Inc., 577 F.3d 747, 750 (7th Cir. 2009). It is undisputed that plaintiff was eligible for FMLA protections. Under the FMLA, an individual is an "eligible employee" if she has been employed for at least 12 months and has performed at least 1,250 hours of service for the employer during the previous 12-month period. 29 U.S.C. § 2611(2)(A). The parties agree that plaintiff satisfied these requirements at the time she requested leave. The parties also agree that defendant TLC falls under the FMLA, because it engages in an activity affecting commerce and employed 50 or more employees within 75 miles

5

for each working day of 20 or more calendar weeks in the preceding calendar year. 29 U.S.C. § 2611(4)(A).

The third element, requiring that plaintiff be entitled to FMLA leave, is also met. The FMLA permits an employee to take leave to care for a spouse suffering from a "serious health condition." The parties do not dispute that plaintiff took family leave to care for her husband. Section 2611(11) defines "serious health condition" as " an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." Plaintiff's husband suffers from advanced liver cirrhosis and, as a result, recurrent ascites. The record establishes that plaintiff's husband entered the intensive care unit of Palos Community Hospital as a result of these medical problems on March 27, 2012, where he remained until at least April 12, 2012. Over the next ten weeks, plaintiff's husband was transferred to several different hospitals, spending much of that time in intensive care units, on life support. These medical issues clearly constitute a "serious health condition" under the FMLA, entitling plaintiff to leave in order to care for her husband.

The fourth element requires the employee to provide sufficient notice to the employer of her intention to take leave. However, "the notice requirements of the FMLA are not onerous." Burnett, 472 F.3d at 478. The "employee need not expressly mention the FMLA in his leave request or otherwise invoke any of its provisions." Id. Instead, the employee need only provide "information sufficient to show that he *likely* has an FMLA-qualifying condition." Id. at 479 (emphasis in original); see also Aubuchon v. Knauf Fiberglass, GmbH, 359 F.3d 950, 953 (7th Cir. 2004) ("[T]he employee's duty is merely to place the employer on notice of a probable basis

for FMLA leave."); Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir. 2001) ("[E]mployers . . . are entitled to the sort of notice that will inform them . . . that the FMLA may apply."). Once the employee has given sufficient information to establish probable need for medical leave, the FMLA imposes a duty on the employer to request additional information as necessary. Burnett, 472 F.3d at 480.

Plaintiff provided sufficient notice of her intent to take FMLA leave. Defendant admits that on April 11, 2012, Forkan, the Owner and Executive Director of TLC, received an email from plaintiff requesting family leave to take care of her seriously ill husband. In her email response, Forkan acknowledged plaintiff's husband's poor health and the need for plaintiff to care for him. Forkan granted plaintiff's request, stating that she would "make [plaintiff's] family leave Effective Monday April 15th." Forkan was not only put on notice of a probable basis for FMLA leave, but also clearly understood that plaintiff was requesting leave under the FMLA. In line with FMLA section 2611(c)(1), Forkan's email to plaintiff stated that plaintiff's insurance would remain "in effect for 12 weeks of family leave." Further, as outlined in section 2612(d)(2), Forkan agreed to look into whether plaintiff's unused personal and vacation days could be used as a part of her leave. Forkan's claims in her deposition that she did not know plaintiff was requesting leave under the FMLA or that TLC was subject to the FMLA are directly contradicted by this April 11, 2012, email exchange. While plaintiff may not have followed the steps for requesting family leave specified in defendant's employee handbook, Forkan was put on adequate notice of a probable basis for FMLA leave and granted the request without requiring additional information or actions.

Finally, there is also no genuine issue as to whether defendant denied plaintiff an FMLA benefit to which she was entitled. Under the FMLA, plaintiff was entitled to 12 workweeks of leave and, upon return from leave, reinstatement to the position she held at the time her FMLA leave began or to an equivalent position. Per Forkan's direction, plaintiff's FMLA leave went into effect on April 15, 2012, and should have expired on July 8, 2012.[5] It is undisputed that on June 5, 2012, Forkan informed plaintiff that she had filled plaintiff's kindergarten class with another teacher, that her insurance was being canceled, and that there was no position for plaintiff at TLC even if she returned to work prior to her leave expiring. Defendant's business records show that plaintiff was terminated on June 7, 2012. Given these undisputed facts, the only issue is whether defendant fired plaintiff to prevent her from exercising her right to reinstatement to her former position or an equivalent position. See Simpson v. Office of the Chief Judge of the Circuit Court of Will County, 559 F.3d 706, 712 (7th Cir. 2009) ("Firing an employee to prevent her from exercising her right to return to her prior position can certainly interfere with that employee's FMLA rights.").

Defendant argues that plaintiff was terminated not because of taking leave, but instead because plaintiff's kindergarten teaching position was eliminated and replaced with a Montessori kindergarten class. Because plaintiff did not attend the April 2012 Montessori training, she was not qualified to teach the new Montessori kindergarten class. Defendant contends that because

---

[5] There is some dispute concerning whether plaintiff's FMLA leave began on March 26 or April 15, 2012. Had plaintiff's leave begun on March 26, her 12 weeks of leave would have expired on June 18, 2012. Because plaintiff was terminated on June 5, 2012, the result is the same regardless of whether her FMLA leave began on March 26 or April 15, 2012.

plaintiff's "position was eliminated when she was on FMLA leave for reasons unrelated to the leave," plaintiff had no right to reinstatement.

Defendant is correct that plaintiff's termination, on its own, is not sufficient to establish a violation of the FMLA. An employee's right to reinstatement following FMLA is not absolute. The FMLA allows an employer to refuse to restore an employee to the "former position when restoration would confer a 'right, benefit, or position of employment' that the employee would not have been entitled to if the employee had never left the workplace." Kohls v. Beverly Enters. Wisc., Inc., 259 F.3d 799, 805 (7th Cir. 2001), quoting 29 U.S.C. § 2614(a)(3)(B). To satisfy this exception, "[a]n employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested." 29 CFR § 825.216(a); Gerking v. Wabash Ford, 2002 WL 31045367, at *10 (S.D. Ind. Sept. 6, 2002).

As an initial matter, Forkan's deposition testimony contradicts defendant's claims that plaintiff was not reinstated because of her lack of Montessori training and a lack of other available teaching positions. Forkan testified that had plaintiff's email on May 31, 2012, stated that she was ready to come back immediately, Forkan "would have let her come back." Forkan stated that although plaintiff could not have taught the Montessori kindergarten class as a result of her lack of training, "she would be in some classroom," potentially teaching two or three year olds, whom she was qualified to teach.

Further contradicting its claim that plaintiff was fired for not attending the April 2012 Montessori training, defendant seems also to argue that plaintiff was not entitled to reinstatement because she requested additional time off that she was not entitled to under the FMLA. Forkan testified that she did not understand plaintiff's May 31, 2012, email to be a request to take

9

additional time off, but instead believed it was an unequivocal statement that she was taking the summer off. Defendant argues that it was under no obligation to extend plaintiff's FMLA leave, and therefore concludes that this creates a triable issue of material fact that precludes summary judgment on plaintiff's interference claim. The court disagrees.

Despite Forkan's deposition testimony, the documentary evidence submitted by the parties clearly establishes that plaintiff was terminated notwithstanding her request to take additional time off. As discussed above, on May 31, 2012, plaintiff emailed Forkan about returning to work. Plaintiff stated that it was "almost time for [her] to return to work," but that because of her husband's continued medical needs she was "***requesting*** to have the rest of the summer off," that she "***hope[d]*** [Forkan] would give [her] this ***opportunity***," and that she would "take whatever teaching job is available." [Emphasis added]. On June 5, 2012, Forkan responded to plaintiff's May 31 email: "I had to fill the Kindergarten position. I am going to make it a Montessori kindergarten. Michelle went to the Montessori training in Moline so she will be doing it in the fall. I do not know what will happen in the fall right now we are over staffed. Your insurance is being canceled unless you want to pay $500 per month to keep it in effect." Plaintiff responded less than an hour later: "if I came back on [June] 17th what would my position be?" Defendant replied a few minutes later: "There is no position." Although it is hard to believe that Forkan would not have known plaintiff was asking for, not demanding, more time off through the use of words such as "request," "hope," and "opportunity," any confusion regarding plaintiff's request was clarified on June 5, 2012, when plaintiff volunteered to come back to work prior to the expiration of her FMLA leave. Forkan's deposition testimony is belied by her own words at the time she communicated with plaintiff; it is not even a "scintilla of

evidence," and is thus insufficient to require submission to a jury. See, e.g., Gunning v. Cooley, 281 U.S. 90, 94 (1930).

Even if defendant's claims regarding the Montessori training are truthful, plaintiff was still denied a benefit to which she was entitled under the FMLA. Forkan's June 5, 2012, email informed plaintiff that there was no position for her at TLC because the school's kindergarten had been converted to a Montessori program and Michelle Massarello had taken the necessary Montessori training. Massarello attended the Montessori training in April, while plaintiff was on FMLA leave. During Forkan's deposition, plaintiff's counsel asked Forkan, "say that this had never --that [plaintiff's] husband had never gotten sick and she had never left --." Forkan responded: "[Plaintiff] would have gone through the training; and she would have worked with me." Thus, the reason that supposedly justified plaintiff's termination- a lack of Montessori training- was the direct result of plaintiff's FMLA leave. See Lewis v. School District #70, 523 F.3d 730, 743 (7th Cir. 2008) (reversing district court's grant of summary judgment for the employer on an FMLA claim where the reasons for termination were a direct result of employee's FMLA leave so that termination for those reasons would have made her FMLA leave "illusory."); see also 29 C.F.R § 825.215(b) ("If an employee is no longer qualified for the position because of the employee's inability to attend a necessary course, renew a license, fly a minimum number of hours, etc., as a result of the leave, the employee shall be given a reasonable opportunity to fulfill those conditions upon return to work.").

Defendant's additional arguments relating to plaintiff's FMLA interference claim are not relevant to the court's determination of the present motion. It is irrelevant to plaintiff's interference claim whether plaintiff knew TLC was converting to a Montessori program,

11

defendant provided plaintiff with additional benefits, or plaintiff did not follow the procedures for requesting leave as outlined by defendant's employee handbook. Having found that there are no genuine issues of material fact as to the five elements necessary to establish FMLA interference, the court grants plaintiff's motion for summary judgment on liability as to Count I.

**2.     Count II - Retaliation**

The FMLA provides protection for employees whose employers discriminate against them for exercising their substantive rights. 29 U.S.C. § 2615(a)(2). Specifically, "an employer is prohibited "from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c); see also King v. Preferred Technical Group, 166 F.3d 887, 892 (7th Cir. 1999). "The difference between a retaliation and interference theory is that the first 'requires proof of discriminatory or retaliatory intent while [an interference theory] requires only proof that the employer denied the employee his or her entitlements under the Act.'" Goelzer v. Sheboygan County, Wisc., 604 F.3d 987, 995 (7th Cir. 2010), quoting Kauffman v. Fed. Express Corp., 426 F.3d 880, 884 (7th Cir. 2005).

Plaintiff argues that Forkan's deposition testimony that had plaintiff never taken leave and had completed the Montessori training she would still be working for defendant, is sufficient to establish retaliation. Plaintiff also contends that "Forkan's actions show that soon after [plaintiff] went out on approved leave, Forkan took steps to replace her," further establishing retaliation. Defendant argues that plaintiff was not fired in retaliation for exercising her right to take FMLA leave, but instead because her former teaching position was eliminated.

While it is clear that defendant denied plaintiff a benefit to which she was entitled under the FMLA, whether defendant acted with retaliatory or discriminatory intent when firing

12

plaintiff is still a genuine issue of material fact. See King, 166 F.3d at 891 ("when an employee raises the issue of whether the employer discriminated against an employee by taking adverse action against the employee for having exercised an FMLA right, the question of intent is relevant."). Courts in this district have recognized that intent often cannot be resolved at the summary judgment stage. See e.g., HCP of Illinois, Inc. v. Farbman Group I, Inc., 978 F. Supp. 2d 943, 956-57 (N.D. Ill. 2013) ("motive and intent are rarely susceptible to resolution at the summary judgment stage."). Although summary judgment is not unavailable where issues of intent predominate, the evidence plaintiff points to in order to establish retaliation, although strong, does not entitle plaintiff to judgment as a matter of law. Forkan's deposition testimony merely establishes that had plaintiff never taken FMLA leave she would still be working for defendant TLC because she would have gone through the necessary Montessori training. This does not establish discriminatory intent, nor does the fact that defendant began training another individual to teach the Montessori kindergarten class. This evidence shows only that defendant was making changes to its kindergarten program and needed someone properly trained to carry out its new curriculum while plaintiff was on leave. As such, plaintiff's motion for summary judgment as to Count II is denied.

## CONCLUSION

For the reasons described above, plaintiff's motion for partial summary judgment is granted in part and denied in part. Summary judgment as to liability is granted as to Count I and denied as to Count II. The parties are directed to meet and confer with respect to the

computation of plaintiff's damages on Count I, and to inform the court at the next status hearing of the future course of this lawsuit.


**ENTER:    January 6, 2015**

_____
**Robert W. Gettleman
United States District Judge**